**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

CHESTER SMALKOWSKI, *et al*.,
Plaintiffs,
v.
HARDESTY PUBLIC SCHOOL DISTRICT, *et al*.
Defendants.

Case No. CIV-06-845-M

**ORDER**

Before the Court is "Plaintiffs' Motion for Temporary Restraining Order or in the Alternative Motion For Temporary Injunction" [docket no. 29], filed September 20, 2006. On September 29 and October 6, 2006, Defendants filed their responses. Based upon the parties' submissions, the Court makes its determination.

I. INTRODUCTION

Plaintiffs Chester and Nadia Smalkowski are the parents of N.S. and C.S. who were once students at Hardesty High School ("Hardesty High") in the Hardesty Public School District. N.S. was a member of the Hardesty High girls' basketball team. Plaintiffs allege that in November of 2004, Defendant Ernest Cook ("Cook"), former Hardesty High girls' basketball coach, told N.S. and other team members to recite The Lord's Prayer before a basketball game and that N.S. refused. Plaintiffs allege that, as a result of N.S.'s refusal, she was made to go to the locker room and was subsequently removed from the basketball team under the pretext of false allegations.[1]

[1]Plaintiffs attached a copy of a letter from Larry Lewis, attorney for the school district, which was sent in response to Plaintiffs' objections to N.S.'s suspension from the basketball team. According to Plaintiffs, the letter cites "Plaintiff N.S.'s *lack of participation in the team's religious ceremony*, as a motivating factor in Plaintiff N.S.'s removal from the team." Plaintiff's Motion at 2. However, the letter actually cites N.S.'s lack of participation in beginning and ending practice ceremonies and does not mention religion at all. Exhibit 1 attached to Plaintiff's Motion at 2. The

Plaintiffs allege that the preceding events were repeated in November of 2005. Specifically, they allege that N.S. again tried to participate with the girls' basketball team, was forced to recite The Lord's Prayer, and was again falsely accused of stealing. Plaintiffs also allege that N.S. was falsely accused of threatening another student and suspended from school. Additionally, Plaintiffs allege that N.S. and C.S. were harassed and threatened by former Superintendent David Brewer's son and others, that the school failed to create a safe environment conducive to education, and that Chester and Nadia Smalkowski were forced to remove N.S. and C.S. from the school because they feared for their safety.

Defendants contend that religion played no role in N.S.'s removal from the basketball team in November of 2004 or her suspension from school in November of 2005. Defendants assert that N.S. admitted stealing another player's basketball shoes and on a separate occasion, stole shoes belonging to a player on an opposing team. Defendants also assert that N.S. made derogatory comments about the team, which negatively impacted team chemistry and morale, was late to practice nearly every day, and refused to participate in the team's practice ending routine of clasping hands overhead while chanting "All for one, one for all, Lady Bison Basketball." Finally, Defendants state that N.S.'s suspension expired on December 2, 2005, and that she may return to

---

letter also cites N.S.'s admitted taking of another player's shoes, her persistent lateness to practice, her derogatory statements about the basketball team, and her lack of dedication as factors in the decision to remove her from the team. *Id*.

While the school district acknowledges that some team members would meet members of opposing teams at center court following basketball games to recite The Lord's Prayer, it asserts that this practice was completely voluntary, led by students, and only participated in by students. Defendants assert that participation was never a team requirement. Plaintiffs do not refer to this particular activity in the instant motion or in their Complaint. Further, Defendants assert that the practice ceremonies referred to in the letter involve team members "forming a circle, clutching their hands high above them and chanting 'All for one, one for all, Lady Bison Basketball.'" Defendant School District's Response at 3.

school at any time.[2]

In the instant motion, Plaintiffs request that the Court enter a temporary restraining order ("TRO") or a preliminary injunction:

> (A) . . . enjoining Defendant School District from permitting employees of the school district to lead, encourage, promote, or participate in prayer with or among students during curricular or extracurricular activities, including before, during or after school related sporting events or other extracurricular activities;
>
> (B) . . . enjoining Defendant School District from permitting prayers at school sponsored events;
>
> (C) . . . demanding Defendant School District to advise students in the school district, in writing, that under the First Amendment of the United States Constitution, prayer and religious activities initiated and promoted by school officials are unconstitutional, and that students have a constitutional right not to participate in such activities; [and]
>
> (D) . . . demanding Defendant School District reinstate Plaintiff children, N.S. and C.S. back into the school district and school, and further assure the children's appropriate protection from verbal and physical threats from the student body, faculty and staff of the school district.

Plaintiffs' Motion at 9.

## II. DISCUSSION

The standard for granting a TRO is the same as that for a preliminary injunction. *See Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). A movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant

---

[2]Although N.S.'s suspension expired on December 2, 2005, N.S. was not allowed to play in any basketball games until December 10, 2005, because she violated the requirement that she not attend any school functions while suspended.

if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). As the movants, Plaintiffs must establish that each of the factors tip in their favor. *Kikumura*, 242 F.3d at 955. "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *See Dominion Video Satellite, Inc.*, 269 F.3d at 1154 (internal citations omitted). Whether to grant a preliminary injunction rests within the sound discretion of the trial court. *See United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999), *cert denied*, 529 U.S. 1086 (2000).

A. Irreparable Harm

"Perhaps the single most important prerequisite for the issuance of a [TRO or] preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995). According to the Tenth Circuit,

> [t]o constitute irreparable harm, an injury must be certain, great, actual and not theoretical. Irreparable harm is not harm that is 'merely serious or substantial. The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.

*Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal citations and quotations omitted).

Plaintiffs assert that they will suffer irreparable harm if the requested relief is not granted.[3] Plaintiffs' specific assertions of harm are that N.S. was required to recite the Lord's Prayer at basketball games, that N.S. and C.S. were threatened verbally and physically, and that N.S. and C.S. were forced to attend school elsewhere.[4]

Having carefully reviewed the parties' submissions, the Court finds that Plaintiffs have presented no evidence that they will suffer irreparable harm if the requested relief is not granted. Plaintiffs' conclusory allegations are insufficient. Specifically, the Court finds that Plaintiffs have not alleged that there is any school district policy requiring the recitation of any prayer by basketball team members, or any other Hardesty student. Further, the Court finds that Plaintiffs' allegations of N.S. having been required to participate in the recitation of The Lord's Prayer center on the conduct of Cook, and since Cook is no longer employed by the school district in any capacity, the Court finds that the threat of him requiring Plaintiff N.S. to recite The Lord's Prayer is no longer actual or imminent. As such, the Court finds that Plaintiffs' request for relief on this ground should

---

[3]Plaintiffs assert that an injunction was issued in a case "nearly identical" to the case at bar. However, the Court finds the Fifth Circuit decision Plaintiffs rely upon, *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 164 (5th Cir. 1993), is distinguishable from the case at bar on several grounds. *Doe* involved the excessive entanglement of the school and the school district in the religious activity at issue. In *Doe* the coach led the prayer and stood over basketball players during the prayer. The team prayed on the bus before going to away games and upon returning to school. Prayer had been part of all physical education classes for at least seventeen years. Pamphlets with prayer and religious songs were handed out during ceremonies honoring athletic teams. Prayer opened all pep rallies, football games, graduation ceremonies, employee banquets, new teacher orientations, and PTA meetings. Also, bibles were handed out to intermediate school students. Further, the defendant school district admitted that these practices went on and that they were conducted as an integral part of the district's curricular and extracurricular programs while students were under the active supervision of district personnel. *Doe*, 994 F.2d at 162 n.2. In the case at bar, Plaintiffs do not allege that Defendants have engaged in any such pervasive activities.

[4]Plaintiffs do not allege that C.S. was ever suspended from school, ever removed from any extracurricular team, or ever made to participate in any religious exercise.

be denied.

Plaintiffs also assert that N.S. and C.S. were threatened and that they have been forced to attend school elsewhere. They request the Court to require the school district to "reinstate Plaintiff children, N.S. and C.S. back into the school district, and further assure the children's appropriate protection from verbal and physical threats from the student body, faculty and staff of the school district."

Having reviewed the parties' submissions, the Court finds that there is no evidence that Plaintiffs N.S. and C.S. were threatened or that they are otherwise being kept out of Hardesty schools. First, Plaintiffs assert that they were threatened by former Superintendent Brewer's son. In fact, this is the only specific person identified by Plaintiffs as having threatened N.S. and C.S. The former superintendent's son is no longer a Hardesty school student. Therefore, to the extent that he posed a threat to N.S. and C.S., the Court finds that said threat no longer exists. Plaintiffs further assert that N.S. and C.S. were threatened by other students. In support of this assertion, Plaintiff submitted a photo of a young man holding a gun and smoking a cigar. However, Plaintiffs do not identify the person in the picture, do not assert that he is a Hardesty school student, and do not describe any threat made by this unidentified person toward N.S. or C.S. Defendants assert that both the current and former superintendent reviewed the photograph and do not believe the person is a Hardesty school student. As such, the Court finds that the photograph does not establish an actual threat such that there is a clear and present need for the relief sought.

Second, Plaintiffs assert that N.S. and C.S. have been forced to attend school elsewhere. Defendants assert that there is no barrier to Plaintiffs N.S. and C.S.'s re-enrollment at Hardesty schools. Specifically, the school district asserts that "[t]he Smalkowskis need only re-enroll their

children or request home-bound instruction[5] from the School District . . . ."

Having reviewed the parties' submissions, the Court finds that there is currently no threat of imminent harm to Plaintiffs N.S. or C.S. and that there is no barrier to N.S. and C.S.'s return to school. As such, the Court finds that Plaintiffs' request on these grounds should also be denied.

As to Plaintiffs' request that the Court order the school district to advise all students, in writing, of their First Amendment right not to participate in religious activities, the Court finds that such relief is not warranted. Although similar relief was granted in *Doe v. Duncanville Indep. Sch. Dist.*, as previously explained in footnote 1 supra, *Doe* is distinguishable from this case on many grounds including the fact that *Doe* involved the excessive entanglement of the school district and its employees in religious activities including passing out bibles. In this case Plaintiffs do not allege the same level of involvement and do not allege that students throughout the school are being forced to participate in prayer. Further, since the only school district employee alleged to have required N.S. to recite The Lord's Prayer was Cook, who no longer works at the school, the Court finds that Plaintiffs' request for such extraordinary relief should be denied.

Accordingly, having carefully reviewed the parties' submissions, the Court finds that Plaintiffs will not be irreparably harmed if the requested relief is not granted.

B. Remaining Factors

Because all four requirements for a preliminary injunction must be satisfied, and because the Court finds Plaintiffs have failed to satisfy the irreparable harm element, the Court declines to address the remaining requirements.

---

[5]Students receiving home-bound instruction follow the curriculum with weekly input from a Hardesty school teacher. Such students are allowed to participate in extracurricular activities and sporting events.

## III. CONCLUSION

For the reasons set forth in detail above, the Court finds that Plaintiffs are not entitled to the extraordinary relief they seek, and that, as such, the instant motion for temporary restraining order or preliminary injunction should be, and hereby is, DENIED.

**IT IS SO ORDERED this 18th day of October, 2006.**

Vicki Miles-LaGrange

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE